**GULF STATES PAPER CORPORATION, Plaintiff,**

v.

**Eloise H. INGRAM, Defendant.**

**CV 86–H–95–W.**

United States District Court, N.D. Alabama, W.D.

March 7, 1986.

Chris Mitchell, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Frank S. James, III, George C. Batcheler, Asst. U.S. Atty (on appeal), George R. Salem, Solicitor of Labor, Bobbye D. Spears, Regional Solicitor, George D. Palmer, Asso. Reg. Solicitor, William H. Berger, Atty. Office of the Solicitor, U.S. Dept. of Labor, Atlanta, Ga., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HANCOCK, District Judge.

Pursuant to the January 21, 1986 order, this cause came on for a hearing on the merits on February 19, 1986 with regard to the issues presented by the complaint and answer. Having considered the evidence presented at the hearing and the oral and written argument of counsel, the court proceeds to make its findings of fact and conclusions of law.

Eloise H. Ingram has been an employee of Gulf States Paper Corporation for over 13 years. Her current position is that of a

secretary in the Corporate Planning Department, earning approximately $17,000 annually, and she has been in that department for the past 11 years. During the 11-year period she has also been a member of the U.S. Army Reserve, serving initially as a secretary and more recently as a medical specialist. She currently is assigned to the 75th Field Hospital, which is a reserve unit located in Tuscaloosa, Alabama. She holds the rank of sergeant E–5, with an MOS of 91A. This is the lowest of three MOSs in the patient care field and is equivalent to a hospital orderly. The next higher MOS is a 91B, equivalent to a paramedic, and the highest is 91C, equivalent to a licensed practical nurse (LPN). In addition to participating in her monthly weekend drill, she has during each of the past 10 years requested and been granted a leave of absence by Gulf States to attend a two-week summer reserve training program.

The Corporate Planning Department has a total of 7 employees, including its manager, Lawrence A. Mumbleau. Two of the 7, however, do not perform corporate planning duties but work entirely with Gulf States' Basil Ede Wild Life Print Program, an apparent public relations personal interest of one of the principal owners of Gulf States. Another of the 7, Rick McLain, is Planning Coordinator, a management position. Thus, excluding the 2 Wild Life Print employees and the 2 management employees, there are only 3 employees in the department, 1 of whom is Ms. Ingram. The major portion of her duties are general secretarial duties (typing, filing, record keeping, etc.), but a significant, non-secretarial duty relates to the primary responsibility of the department, the annual preparation in May of a 5-year forecast, or "corporate plan," which projects Gulf States' financial and operating position for the next 5 years. More importantly, she is actively involved in defining for the 7 operating divisions data needed quarterly to prepare analyses of performance against the corporate plan. These quarterly analyses, known as "actuals," are prepared in September, December, March and June (the year-end report) to compare actual performance with the then existing corporate plan. During a period of 2 to 3 weeks prior to the preparation of each quarterly actual, Ms. Ingram spends about 20 hours receiving data from the 7 operating divisions, reviewing the data for completeness, soliciting necessary supplemental data and inputting the data into a computer system specially designed to produce the actuals. This job assignment requires her to be familiar with approximately 60 separate data files and the general operations of the 7 divisions from which she receives the data for input by her into the computer for use by one or more of the 290 different computer programs. She has estimated in the past that 20% of her work time is spent on this computer assignment. The job requires a great deal of interaction with other company employees during normal working hours. Ms. Ingram is the only non-management employee of Gulf States who is sufficiently familiar with this job assignment to perform these duties. The only other employee of Gulf States who can perform these duties is the company's Planning Coordinator, Rick McLain.

Ms. Ingram is of the opinion that her duties associated with the corporate plan and the quarterly actuals are duties which require 6 months of on-the-job training of a person with 1 year of business studies beyond the high school level before the person would be qualified to perform them. Gulf States agrees with this opinion, and the court finds these opinions are valid. Although the actual hours of instruction of a new person would be small, both agree that the new person would have to participate, under supervision, in the preparation of two quarterly actuals before becoming sufficiently skilled to perform this job duty. Since accepting this job duty about 6 years ago, she has been available to produce the actuals each quarter except one when she was out for 7 weeks with an injury. Rick McLain performed her duties on this occasion, in addition to his normal managerial duties. It is not feasible for McLain to do this on an extended basis, such as a year.

The 75th Field Hospital is *under* strength with reservists with MOSs of 91A and 91C and *over* strength with reservists with an MOS of 91B. Before a reservist can be awarded a 91C MOS, the reservist must qualify as an LPN. Thus, to add reservists with a 91C MOS, the unit must look to non-reservists LPNs who are willing to join the reserve unit (and take basic training and refresher nursing courses) or to reservists in the unit with a 91A or 91B MOS who can and will pursue the one-year college level course of study necessary to be an LPN. Drawing from 91As, however, would further compound the under strength of that MOS, so drawing from the over strength 91Bs would be much more sensible. As mentioned earlier, Ms. Ingram holds a 91A MOS and thus is in a slot where the unit is under strength. Her E–5 rank, however, is as high as she can go with a 91A MOS. Since the unit is over strength with reservists with a 91B MOS, she cannot currently receive a promotion by qualifying for that MOS. Thus to receive a promotion in the patient care field within the foreseeable future, she must qualify for a 91C MOS which means she must become an LPN. The only available opportunity to obtain at the expense of the United States the necessary college level training is a one-year course of full-time study at Bessemer State Technical College. Neither the reserve program nor her unit requires that she obtain a promotion or become an LPN.

 The reserve command to which the 75th Field Hospital is attached has contracted with Bessemer State Technical College to train, at government expense, reservists to become an LPN. Ms. Ingram learned about the program and volunteered to participate in the 52-week course of study. In anticipation of being accepted by the Army for the training program, she requested on October 28, 1985, a military leave of absence for one year, effective March 3, 1986 (later modified to February 27, 1986) to attend nursing school at Bessemer State Technical College. Viewing the leave request as unreasonable, Gulf States denied it. Thereafter Ms. Ingram advised Gulf States that she nevertheless intended to be absent for the full year to attend Bessemer State. Gulf States then told her that if she did, she had, in effect, voluntarily terminated her employment. She thereafter on or after January 21, 1986, received orders placing her on active duty for one year, beginning February 27, 1986, and so advised Gulf States. Shortly before the issuance of such orders, Gulf States instituted this declaratory judgment action seeking, among other things, a declaration that her request for the one-year leave of absence is unreasonable under 38 U.S.C. § 2024 and that it did not violate 38 U.S.C. § 2024 in denying the leave request. For the reasons set forth in its February 18, 1986 order, this court concluded it had jurisdiction to hear the case. The issue presented for decision is straight-forward but not simple, for it involves striking a balance between the rights and duties created in general in the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021, et seq. and in particular in § 2024(d). Under § 2024(d) the reservist has the right to request a leave of absence "for the period required to perform active duty for training" and upon release from the period of active duty for training, the employer is required to permit the reservist to return to the former position "with such seniority, status, pay, and vacation as such employee would have had if such employee has not been absent for such purposes." A condition on the duty of the employer to grant the leave request and on the right of the reservist to return is that the leave request be reasonable. *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir.1981). The subsequent decision in *Monroe v. Standard Oil Company,* 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), did not eliminate the reasonableness test. *Bottger v. Doss Aeronautical Services, Inc.,* 609 F.Supp. 583 (M.D.Ala.1985). The reasonableness test must be viewed in the context of the reservist's military obligation and the requirements of the employer, taking into consideration all factors relevant to the issue of reasonableness. There is a general

presumption in favor of the reasonableness of the request, and an adverse effect on the employer's productivity and the causing of even considerable inconvenience to the employer, standing alone, do not relieve the employer of the obligations imposed on it. Given the legislative history of § 2024(d) suggesting that Congress contemplated training periods of from short durations up to 30, 60 or 90 days, the more the leave request exceeds 3 months, the easier it becomes to rebut the presumption and to demonstrate unreasonableness. At some point, certainly at 10 years or perhaps 5 years, the simple duration of the leave causes the request to be unreasonable *per se*. A leave of 1 year, however, does not reach that point. Thus Gulf States has the burden of rebutting the presumption of reasonableness and the court is satisfied it has more than discharged that burden. Thus, under FRE Rule 301 the reservist has the burden of proving that the leave request was reasonable. Ms. Ingram has failed to discharge that burden. Indeed the court concludes that Gulf States has shown by a preponderance of the evidence that the leave request was unreasonable. Rick McLain, the only other trained employee, is too involved with his managerial duties to take on for a year the non-secretarial duties of Ms. Ingram. No other person, whether that person be a new temporary employee, a new permanent employee or an existing employee temporarily assigned her non-secretarial duties can competently perform these duties for at least 6 months. To request Gulf States to do without for a period of 6 months a non-managerial employee qualified to perform this very vital job assignment in order to permit the reservist to take a voluntary 12 month leave of absence to train so as to change her MOS from one that is in current short supply in her unit to another that also is in short supply is simply not reasonable. Gulf States points out its commendable record in granting the numerous leave requests of Ms. Ingram and all other employee reservists. The number of reservists granted leave is indeed great, and the total days of leave granted is staggering. But all of that is irrelevant to the question of whether the current leave request of Ms. Ingram is reasonable. Its reasonableness, *vel non*, must stand on its own. And under all the circumstances shown by the evidence, after a full balancing of the conflicting and competing interests of the employer, the employee and the reserve unit, the leave request of Ms. Ingram flunks the test of reasonableness. The request was not reasonable and the court will, by separate final judgment, so declare, also declaring that Gulf States did not violate 38 U.S.C. § 2024(d) in denying the leave request.