**GULF STATES PAPER CORPORA-TION, Plaintiff-Appellee,**

v.

**Eloise H. INGRAM, Defendant-Appellant.**

No. 86–7239.

United States Court of Appeals, Eleventh Circuit.

March 9, 1987.

Frank W. Donaldson, U.S. Atty., George C. Batcheler, Birmingham, Ala., William H. Berger, Atlanta, Ga., Scott D. Ernshaw, Michael Jay Singer, Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant.

Chris Mitchell, Carol Sue Nelson, Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT,[*] Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

This appeal arises from a declaratory judgment action brought by Gulf States Paper Corporation ("Gulf States") to determine its obligations under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021 *et seq.* (1979), commonly known as the Veterans' Reemployment Rights Act. Gulf States had denied a one-year leave of absence requested by its employee Eloise H. Ingram, defendant-appellant. Ingram, a medic with the Army Reserve, had sought the leave to participate in a licensed practical nurse ("LPN") training program. The district court held that Ingram's leave request was unreasonable and therefore Gulf States did not violate the Act in denying the request. 633 F.Supp. 908 (1986). Ingram appeals from that decision.

On appeal, Ingram raises two issues: (1) whether the district court erred in assuming jurisdiction under 28 U.S.C. § 1331 over a declaratory judgment action brought by an employer under the Veterans' Reemployment Rights Act; and (2) whether the district court erred in finding that Ingram's leave request was unreasonable and that Gulf States did not violate 38 U.S.C.

---

[*] Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

§ 2024(d) in denying her request. For the reasons stated below, we find that the district court had jurisdiction, but we reverse the finding that the leave request was unreasonable.

## I

Ingram has served for eleven years in the Army Reserve. At the time of this suit, she was highly rated and had achieved the rank of sergeant, E–5, the top rank in her "military occupational specialty" (MOS) as a basic medic. To qualify for further promotions, Ingram needed training for a higher MOS—that of licensed practical nurse (LPN).

The Army Reserve identified a shortage of LPN's and established a one-year training program with a local technical college. The Reserve then recruited reservists from other specialties to participate in the training program and fill the LPN requirement. Ingram volunteered for the program and requested a one-year leave of absence from Gulf States.

She notified Gulf States on October 28, 1985 that her active duty training would begin March 1986. According to Joseph F. Vengrouskie, Gulf States' Director of Corporate Personnel, the company denied her request as unreasonable for four reasons: (1) twelve months was an unreasonable length of time; (2) she had volunteered for the training; (3) the training was not job-related; and (4) the absence would create an undue financial burden on the company.

At the time of the leave request, Ingram had been employed at Gulf States for more than thirteen years. She had held the position of secretary in the corporate planning department for eleven years. In addition to her general clerical duties, four times a year Ingram entered financial data in the company's computer. Ingram estimated she spent twenty percent of her time on this task and she was the only non-management employee who could perform that job. She also stated that training a new person to perform the task would take about six months.

Vengrouskie asked Ingram if there were any alternatives to the one-year training. She said that other alternatives, such as night-time programs or correspondence classes, were not possible. When the company realized that Ingram would take the leave with or without its permission, it filed this suit to determine whether the Veterans' Reemployment Rights Act would require her eventual reinstatement.

## II

### Jurisdiction

■ The district court found subject matter jurisdiction under 28 U.S.C. § 1331, the general federal question statute, because this case involves the "conflict between the rights of the reservists and the obligations of the private employer" under 38 U.S.C. §§ 2021 et seq.[1] We agree with this conclusion. 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

No simple test exists to determine whether a case "arises under" the laws of the United States, although our foremost jurists and legal scholars have struggled to articulate one. Justice Holmes stated that

---

**1.** On appeal, Gulf States not only supports the trial court's finding of general federal question jurisdiction, it also argues that 38 U.S.C. § 2022 of the Veterans' Reemployment Rights Act provides subject matter jurisdiction for this case. Section 2022 provides that:

[i]f any employer ... fails or refuses to comply with the[se] provisions ..., the district court of the United States ... shall have the power, *upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits such provisions,* specifically to require such employer to comply with such provisions.

38 U.S.C. § 2022 (West Supp.1986) (emphasis added). The person "entitled to the benefits" of the Veterans' Reemployment Rights Act is the reservist or National Guard member. Thus, based on the language of the statute, the district court correctly rejected this section as an adequate basis for jurisdiction. Section 2022, standing alone, does not confer jurisdiction over an employer's suit.

"a suit arises under the law that creates the action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Holmes' test, however, generally identifies only those cases that fall *within* arising under jurisdiction. C. Wright, *The Law of Federal Courts* 93–94 (4th ed. 1983). Justice Cardozo's test requires that "a right or immunity created by the Constitution or laws of the United States" supply an "essential element" of the plaintiff's cause of action. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

To further complicate the inquiry, the well-pleaded complaint rule applies. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10 & n. 9, 103 S.Ct. 2841, 2846–47 & n. 9, 77 L.Ed.2d 420 (1983). To invoke federal jurisdiction, a complaint's well-pleaded allegations must raise a substantial issue of federal law. *Id.* at 10, 103 S.Ct. at 2846–47. If the federal question only appears as an anticipated defense, the complaint is not well pleaded. *Id.*

■ The declaratory relief sought in this case adds yet another layer of complexity to the jurisdictional analysis. While the Declaratory Judgment Act, 28 U.S.C. § 2201, does not broaden federal jurisdiction, *see, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950), it does allow parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action. *See, e.g., Franchise Tax Board*, 463 U.S. at 19 & n. 19, 103 S.Ct. at 2851 & n. 19; *Lowe v. Ingall's Shipbuilding, a Division of Litton Systems, Inc.*, 723 F.2d 1173, 1179 (5th Cir.1984) (Declaratory Judgment Act broadens class of litigants—"though the underlying cause of action which is thus actually litigated is the declaratory defendant's, not the declaratory plaintiff's, this does not violate the requirement that what must arise under federal law is the cause of action in issue itself (regardless of to whom it belongs).") " '[I]f the federal is-

sue [presented in a declaratory judgment action] would inhere in the claim on the face of the complaint that would have been presented in a traditional damage or coercive action, then federal jurisdiction exists over the declaratory judgment action.' " *McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir.1986) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767, at 745 (2d 1983)). Therefore, the declaratory judgment device allows a party "to bootstrap its way into federal court" by bringing a federal suit that corresponds to one the opposing party might have brought. *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 607 (5th Cir. 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 171 (1984); *see also Bell & Beckwith v. United States, IRS*, 766 F.2d 910, 912–14 (6th Cir.1985) (discussing declaratory judgment suits that anticipate federal coercive actions).

■ To decide whether the well-pleaded complaint for declaratory relief in the present case properly asserts a substantial federal claim, we must determine whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant. The coercive action in this case would be a suit by Ingram under the Veterans' Reemployment Rights Act seeking reinstatement in her job at Gulf States when she returned from her training program. Ingram's coercive action clearly would present a federal cause of action. Her suit would satisfy both Holmes' and Cardozo's arising under tests. Therefore, Gulf States' suit here that merely anticipates Ingram's federal claim against it falls within section 1331 jurisdiction via the bootstrapping mechanism of the declaratory judgment suit.

### III

*Section 2024(d) and Reasonableness*

■ The second issue is whether the district court erred in finding Ingram's re-

quest unreasonable and that Gulf States did not violate 38 U.S.C. § 2024(d) in denying her leave of absence.

### A. *Standard of Review*

As a preliminary matter, we must determine the applicable standard of review. Gulf States argues that our review is limited to the "clearly erroneous" inquiry applied to a district court's findings of fact. We believe, however, that the *de novo* review accorded legal questions is appropriate in this case. The district court applied a reasonableness requirement to the facts of this case, based upon *Lee v. City of Pensacola,* 634 F.2d 886 (5th Cir.1981),[2] to find that Gulf States did not violate the Act. The question here is whether Gulf States' denial of Ingram's leave of absence violated the Act. The facts are not contested. Instead, we are reviewing the factors that the district court considered in applying the reasonableness test. In so doing, we are further articulating the legal reasonableness standard. Thus, the question presented is one of law and our review is plenary. *See Daley v. United States,* 792 F.2d 1081, 1085 (11th Cir.1986) (questions of law—freely reviewable); *National Bancard Corp. v. Visa U.S.A.,* 779 F.2d 592, 596 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986) (same).

### B. *Reasonableness*

Congress has created an elaborate statutory plan to protect and compensate individuals who serve their country in the armed forces. This protection extends to reservists under sections 2024(d) and 2021(b)(3) of the Veterans' Reemployment Rights Act. *See Monroe v. Standard Oil Co.,* 452 U.S. 549, 554–60, 101 S.Ct. 2510, 2513–17, 69 L.Ed.2d 226 (1981). Congress enacted 38 U.S.C. § 2024 to protect reservists and National Guard members when they seek leaves from their employment to attend military training. This section states that the employee:

shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training or inactive duty training, ... such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d).

Although the statute does not address the "reasonableness" of a reservist's leave request, the Fifth Circuit added a "reasonableness" gloss to section 2024(d)'s requirements. *Lee,* 634 F.2d at 889. Thus, under *Lee,* a reservist's request must be reasonable to qualify for the protections of the Veterans' Reemployment Rights Act. One court has concluded that *Lee* suggests a totality-of-the-circumstances test for determining whether the employee's leave request is reasonable. *Bottger v. Doss Aeronautical Services, Inc.,* 609 F.Supp. 583, 585 (M.D.Ala.1985). We find, however, that certain factors should not be considered in determining reasonableness and that *Lee* does not mandate a "totality" test. Therefore, we must explain the *Lee* inquiry to identify legitimate factors for courts to consider.

We begin with the admonition to liberally construe reemployment rights statutes in favor of those who serve their country. *See Monroe,* 452 U.S. at 574, 101 S.Ct. at 2523–24 (Burger, C.J., dissenting); *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104–05, 65 L.Ed.2d 53 (1980); *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). Next, we acknowledge that Congress is in the best position to weight the benefits to reservists against the burdens upon employers. *Monroe,* 452 U.S. at 565,

---

**2.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) (pre–1981 Fifth Circuit cases adopted as Eleventh Circuit precedent).

101 S.Ct. at 2519. In light of these considerations, any judicial inquiry into the reasonableness of leave requests must be limited and extremely deferential to the reservist's rights. The reservist begins with a presumption that her leave request is reasonable.

To elaborate upon the *Lee* test, we must first determine the factors the Fifth Circuit considered. In *Lee* the plaintiff had sought and received a leave of absence to attend a National Guard training program, which he believed would last fifty-nine days. 634 F.2d at 888. Shortly after he arrived for training, he discovered the course had begun a week earlier and that there were five other "phases" of the program. *Id.* He could complete the other phases by staying for an additional five months. A few days before his first leave was to expire, Lee asked his employer to extend his leave for another five months. *Id.* The employer refused and dismissed Lee. After Lee completed the training, he sought reinstatement, which the employer also denied. *Id.*

The Fifth Circuit noted that section 2024(d) applies whether or not the training duty is required. *Id.* Thus, the court eliminated voluntariness as a factor to be considered in the reasonableness inquiry. The Fifth Circuit primarily focused on Lee's conduct. Lee's unexplained delay in telling his employer about the extension and about the possibility of breaking his training down into its six separate phases persuaded the court that his request was unreasonable. *Lee* essentially directs a court to look for conduct akin to bad faith on the employee's part in determining reasonableness.

The district court in the present case very carefully reviewed the facts of Ingram's employment situation in deciding that her leave request was unreasonable. It correctly considered the length of time of the requested leave. We agree that although one year is not *per se* unreasonable, a greater length of time might reach that level.

 The district court exceeded the bounds of the deferential reasonableness test, however, in two respects. In applying the test, the court stated:

> To request Gulf States to do without [Ingram] ... in order to permit the reservist to take a *voluntary* 12 month leave of absence to train so as to change her [Medical Occupational Specialty (MOS)] from one that is in current short supply in her unit to another that also is in short supply is simply not reasonable.

*Gulf States Paper Corp. v. Ingram*, 633 F.Supp. 908, 912 (N.D.Ala.1986) (emphasis added). First, the court erred in weighing the voluntariness of her leave in the balance. This is not a permissible consideration. Second, the court second-guessed the military personnel decisions concerning recruitment of new LPNs from other units. The statute does not authorize judges to review military personnel needs and to suggest alternative ways to meet those needs. It is irrelevant to the reasonableness inquiry that the Reserves were recruiting Ingram from one short-handed unit to another understaffed unit.

Eliminating the impermissible factors from the inquiry, all that remains are the length of the leave, Ingram's actions, and the burden upon Gulf States in filling her position during her absence. For an employer to succeed in proving a request unreasonable, it must overcome the presumption of reasonableness. Following *Lee*, the weightiest factor in overcoming that presumption is the conduct of the employee. In the present case, Ingram properly notified Gulf States four months prior to the beginning of her requested leave. She discussed the lack of alternatives for receiving the training.

 The negligent, if not somewhat misleading conduct, that was present in *Lee* is notably lacking in this case. The length of the leave here places a substantial burden upon the employer in finding and training a replacement. However, burden to the employer alone is not enough to mark a leave request as unreasonable. If it were, every leave would be unreasonable because all leaves generate costs for the employer. The Supreme Court decided *Monroe* after the Fifth Circuit's decision in *Lee*. The Court noted that Congress has

already deemed burden to the employer insufficient to defeat reservists' rights.[3] Thus, after *Monroe,* there must be something beyond burden to the employer to reach the unreasonable level. The "something more" is the questionable conduct of the employee, such as that found in *Lee.* In the absence of that type of conduct,[4] the reasonableness test most likely will be satisfied. As we stated earlier, the test is limited and deferential to restrain courts from interfering with military recruiting plans. Applying the restated *Lee* test to the facts of this case, Ingram's request was reasonable and Gulf States should have honored it. Ingram acted in a wholly forthright and good faith manner. While her request was for a long period of time, there were no apparent alternatives for her training. The burden alone to Gulf States in this case was insufficient to bar the reservist's request.

Because the district court relied upon improper considerations in applying the reasonableness test, we REVERSE.

---

**3.** In *Monroe,* discussing another section of the Veterans' Reemployment Rights Act, the Court noted:
> The frequent absences from work of an employee-reservist may affect productivity and cause considerable inconvenience to an employer who must find alternative means to get necessary work done. Congress has provided ... that employers may not rid themselves of

such inconveniences and productivity losses by discharging or otherwise disadvantaging employee-reservists solely because of their military obligation.

452 U.S. at 565, 101 S.Ct. at 2519.

**4.** Bad faith conduct might also be shown through requests for leaves of exceptional duration.