**HOUSEHOLD BANK, f.s.b., Plaintiff,**

v.

**JFS GROUP, et al., Defendants,**

**H & R Block, et al., Plaintiffs/Intervenors.**

**No. CIV.A. 01A1405N.**

United States District Court, M.D. Alabama, Northern Division.

March 8, 2002.

---

---

Stewart M. Cox, Andrew J. Noble, III, Hope T. Stewart, Bradley, Arant, Rose & White, LLP, Birmingham, AL, Joseph Michael Druhan, Jr., James C. Johnston, Johnston Druhan, L.L.P., Mobile, for Household Bank, f.s.b., plaintiff.

K. Stephen Jackson, Jeffrey S. Daniel, Jackson & Shuttlesworth PC, Birmingham, AL, for the JFS Group, Mary G. Blackmon, Carl T. Brown, William E. Burch, Vincent R. Butler, Margaret A. Callaway, Dorothy Carruthers, Angela G. Christian, Curtis Crews, Letitia A. Crews, Janice Cunningham, Susie Davis, Willie Davis, Billy Devose, Patricia Dixon, Grace Downie, Sandra E. Dumas, Jessie Erkins, Larry Forte, Vivian A. Fortson, Michael A. Fountain, Tangela D. Glenn, Jean Ingram Gordy, Jeanette Harris, Otis G. Hayward, Eyvonne Hill, Jeffery Jackson, Willie J. Jett, Charlene D. Johnson, Gloria A. Johnson, Tonya A. Jones, Michael D. Kelly, Dorothy Kinsey, Latanya S. McCoy, Donald McCray, Johnnie R. McCray, Tonia McGhee, Lisa McQueen, Mary A. Morris, Denise Paige, Yvonne Paige, Aaron C. Patterson, Modester Peterson, Belinda Ann Rogers, Brenda Ruffin, Onnie Simmons, Emogene L. Smith, Cresha D. Thomas, Evelyn P. Thomas, Theresa L. Turner, Eugene Williams, and Winnifer Williams, the Middle District Group, Marie Anderson, Alvester Brafort, Patricia A. Coleman, Caldonia Jackson, Shirley Jernigan, Mamie D. Mitchell, Diane Peterson, Ernestine D. Starks, Gerald Stokes, Albert Thomas, and Earlene Young.

Steven A. Martino, Stephen L. Klimjack, Richard H. Taylor, Robert J. Hedge, Michael D. Hickman, Taylor Martino & Hedge, Mobile, AL, for the JTMH Group, Anthony R. Aaron, Aretha Aaron, Darren R. Abston, James Agee, Queen Alexander, Linda D. Allen, Lue E. Allen a/k/a Lee Allen, William Allen, Sharon D. Anderson, Brenda J. Avery, Keisha L. Barker, Annie C. Bell, Gwendolyn B. Bender, Patsy Benjamin, Ann M. Berry, Eddie C. Berry, Lennell Black, Angela Blackmon, Geraldine Blue, Mary L. Boykin, Patricia A. Boykin, Addie Braggs, Diann Braggs, Charlene Brewer, Ellis G. Brewer, Azeline Brown, Betty J. Brown, Jacqueline E. Brown, Jesse C. Brown, Kimberly T. Brown, Vera A. Bruno, Edna D. Bryant, Sylvia A. Burch, Darlene Busky, Edna D. Cain, Louise Cain, Lisa Calloway, Pearlie Carter, Beulah M. Catlin, Amelia Causey, Cashanda M. Causey, Christine Causey, Candy L. Cavendish (Gonzalez), Luck Chambers, Sidney R. Cochran, Willie J. Coleman Jr., Gloria J. Cook, Bernice Crenshaw, D.L. Davis, Brenson Crenshaw, Pamela Daffin–Davis, Johnnie R. Davis–Dees, Catrina D. Davison, Dorothy L. Dawson, Barbara Donald, Jerry Donald, Minnie Donald, Lillie Dubose, Connie Dudley, Fannie Ellis, Robbie D. Ellis, Lyndia R. Fair, Ansidina S. Finklea, Mary Finklea, Willie Finklea, Alfred Ford, Timothy E. Forte, Ghitana W. Franklin, Ricky Franklin, Anthony R. Franks, Gloria J. Franks, Larry C. Franks, Lillie V. Franks, Timothy L. Franks, Leroy D. Frye, Julia F. Gant, Gary George, Amy L. Gordon, Jimmy Gordon, Lee E. Gordon, Robert E.

Gordon, Valarie A. Gordon, Julie Gorman, Gracie Gould, Kelvin Gould, Daisy M. Grace, Ruby M. Grace, Andrew Grant Jr., Fred D. Grant, Mattie Grant, Rosa Grant, Katina Grayson, Laurel A. Grayson–McGhee, Henry Green, Sharron Gresham, Johnnie J. Griffin, Barbara Grimes, Mary Grimes, Thelma J. Groomaster, Lola Hale–Thicklin, Luecinda F. Hall, Reginald Hall, Theresa A. Harris, Edna W. Harrison, Jeanette M. Harrison, Ned Harrison Jr., Joyce Hayes, Maccine Hazzard, Larry Hester, Merilyn T. Hicks, Dwight D. Hill, Markethia L. Hill, Mary Kill, Selina N. Hill, Sharon Hill, Stacy Hill, Wesley Hill, Willie Hill, Yolanda Hill, Jerome Hinson, Marche' L. Hinson, Susie Hinson, Marion Howard, Arlene F. Howze, Willie Huff, Derrick O. Hunt, Yolanda Hunt, Juanita Hunter, Willie N. Hunter, Ida B. Ikner, Joseph E. Ingram, Kimetha M. Ivory, Ronald E. Jackson, Cassandra Jenkins, Timothy Jenkins, Annette Johnson, Annie M. Johnson, Bennie L. Johnson, Beverly A. Johnson, Dorothy L. Johnson, Felicia Johnson, Geraldine Johnson, Glenda A. Johnson, Inez Johnson, Jacqueline Johnson, Joe Johnson, John A. Johnson, Lilie M. Johnson, Malene Johnson, Nathaniel Johnson Jr., Penelope Johnson, Tammy F. Johnson, Trista Johnson, Walter J. Johnson, Willie Johnson Jr., Brenda Jones, Costello Jones, Julius A. Knight, Clint Landrum, Rhonda M. Landrum, Joyce M. Lane, Melanie M. Lane, Carolyn D. Leverett, Susie Annie Lewis, Odessa Likely, Linda H. Lockhart, Michael L. Lockhart, Lillian Logan, Hanson W. Mack, Sarah Madison, Arlean Malisham, Gaile Mallard, Carrie M. Manzie, Gwendolyn Marsh, Merry A. Mason, Willie F. Mason, Willie M. Mason, Vester L. McCovery Jr., Callie McCray, Alice M. McGrew, Ollie R. McGrew, Paulette M. McGuire, Hazel McKeller, Joseph McKinnes, Anthony J. McMillian, Leroy Means, Patricia Means, Georgia Merritt, Rosa P. Mickles, Anthony R. Miller, Jennifer L. Miller, Felicia A. Mims, Susie M. Mindinhall, Mary Minor, Annie P. Mitchell, Dorothy Mitchell, David J. Montgomery, Janice V. Montgomery, Karen J. Moore, Martha Moore, Raymond R. Moore, Sheila M. Moore, Connie Moorer, Dorothy A. Moorer, Elizah Moorer, Gwendolyn Moorer, Alvin L. Morris, Cheryl V. Morris, Johnnie R. Morton, Lorraine Mosley, Sherman L. Mosley, Annette Moton, Patricia A. Moton, Nettie Q. Murray, Vickey D. Myles, Dorothy Napier, Wayne Napier, Patrick W. Nickelson, Sandra Nickelson, Ronald L. O'Neal, Hazel Paige, Reginald Parker, Murray G. Peoples, Susie P. Perry, Erma J. Perryman, James B. Perryman, Iloise Peterson, Cynthia Pettway, James Pettway, Jean Pettway, Angela Philon, Carrie Bell Philon, Daniel Philon, Erick L. Philon, Sheryll D. Phipher, Carolyn Pickett, David M. Posey, Barbara H. Powell, Flora Powell, Jessie M. Pritchett, Lisa Johnson Ptomey, Willie C. Purifoy, Eula B. Randall–Watts, Herman Ransom, Artencil G. Rauls, Sharon Ray, Marshall Richardson Jr., Renate J. Richardson, Jacqueline Robinson, Melvin A. Robinson, Florine Rudolph, Ollie Rudolph, Sallie P. Rudolph, Stokely Rudolph, Blenda D. Ruffin, Claresa Saulsberry–Cochran, Laura Scott, Lawrence Scott, Roderick Scott, Sarah P. Scruggs, Cynthia V. Searight, Chris L. Sellers, Mattie Sellers, Levi Shanks, Millie W. Shanks, Pearlie M. Shine, Catherine Simmons, Bertha C@. Simpson, Mike Simpson, Joyce Sims (not signed) Willie E. Sims, Agnita Smith, Benita Smith, Cedric C. Smith, Gennie V. Smith, Loretta Smith, Ora D. Smith, Patricia M. Smith, Susie Smith, Wilbert Smith, Mary J. Starling, Willie E. Steele, Gwendolyn D. Stewart, Emma J. Sullen, Harold O. Tate, Melvin Tatum, Peggy F. Tatum, John F. Taylor, Johnny L. Taylor, Portia F. Taylor, Winnie Taylor, Gene A. Teart, Barbara N. Thicklin, Holman Thicklin Jr., Nemroy Thicklin, Pearlin Thicklin, Carolyn Thigpen, Patircia Thigpen, Elizabeth

S. Thomas, Jacquelyne O. Thomas, Linda G. Thomas, Stephen B. Thomas, Emily J. Thompson, Felicia Thompson, Gerald T. Thompson, Maxie Thompson, Shirley Thompson, Cassandra A. Thornton, Curtis Thornton Jr., Ronnie Thornton, Lenora Timmons, Bessie L. Todd, Michelle Todd, Connel · E. Towns, Jessie P. Townsend, Lasharon C. Townsend, Annie Tucker, Wendell Tucker, Charlie B. Turner, Gloria J. Turner, Izonia Walker, Laura Walker, Lisa R. Walker, Louise Waters, Jacquline L. Watkins, Josie H. Watson, William Watson, Tracie Webster, Hattie M. Wesley, Tyvonnia Wesley, Christopher W. White, Linda White, Byron Williams, Gwendolyn L. Williams–Childs/married, Jake Williams Sr., Johnny L. williams, Willie Wimberly, and Cheryl D. Woodard.

Robert D. Segall, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Will R. Kelly, Hayneville, AL, Jock M. Smith, Cochran, Cherry, Givens & Smith, Tuskegee, AL, for the Adams Group, Melvin Adams, Tracy M. Adams, Melvin Austin, Freddie Boston, Alice M. Bowen, Annie Bowen, Will Bowen, Marie S. Bryant, Shelia C. Cooper, Latanya L. Gordon, Roosevelt Hall, Evelyn Hooks, Frederick A. Hooks, Irvin Hooks, Billy R. Johnson, Willie B. Lee, Felicia M. Ligon–Windham/married, Trasha R. Lilly, Annie N. Mason, Glenda A. Mason, Derrick McCloud, Mattie M. McCloud, Sylvia S. Minger, Latoya Reynolds, Evern Robinson, Nancy M. Sanford, Barbara R. Scott, Laura Smith, Olivia Strickland, Florence S. Watts, and Malcolm Whitlow

C. Knox McLaney, III, McLaney & Associates, Montgomery, AL, Angela L. Kimbrough, Law Offices of Angela L. Kimbrough, Eutaw, AL, for the Abraham Group, Matilda Abraham, Wayne Anderson, Mary C. Armstead, James Beck, Walter Beck, Bertha Bevelle, Linwood Bonner, Linda F. Braggs, Ann D. Brown, Arthur Brown, Connie Brown, John Bullock, Donna Byrd, Minnie Byrd, Jonell Cameron, Lora A. Campbell, James Carter, Tommy J. Carter Jr., Amy D. Chaney, Emmett L. Chaney, Marvin Childs, Georgia Coby, Eddie Cole, Nancy Cole, Barbara Coleman, Minnie Coleman, James Cox Jr., Terrellis A. Crawford, Theresa Cunningham, Willie B. Davis, Charlie Degraffenreid, Sallye B. Degraffenreid, Annie Depriest, Samuel Edwards, John C. Epps Sr., Mildred Epps, Arnetta W. Eskridge, Georgette Fowler, Rosa Freeman, Cathy French, Sharlene French, Joyce M. Gaines, Barbara Ghoston, Ralph Ghoston, Herman Gilmore Jr., Lula Gilmore, Lelia D. Gray, Brian Green, Clinton M. Gurley, Cassandra A. Guy, Willie Hargrove, Jerry Harkness, Willie Harkness Jr., Lemon Harper, Lemon Harper III, Sarah Harper, Willie Harper, Sarah Harrison, Tommy J. Harrison, Andrew Henderson, Susie Henderson, Mary A. Henley, Pinnia Hines, Prince Hines, Minnie Howard, Lorenzo Hubbards, Donnell Ireland, Carolyn Jackson, Chuck Jackson, Jacqueline Jackson, Jones Johnson, Leon Jones, Leroy Jones, Athelyn Jordan, John Jordan, Marie Jordan, Ella Kimbrough, Taya Kimbrough, Diane C. Kirkland, Joseph T. Knott, Mary Knox, Tracy D. Knox, Willie E. Knox, Gregory Lanier, Eva Lavender, Gregory L. Little, Juanita Little, Leo Little, Sidney K. Little, Warren Longmire, Brenda Maxwell, Emma Maxwell, Hester L. Maxwell, Willie Maxwell, Barbara A. Meeks, Annie Mobley, Clifford Mobley, Joann Mobley, Cathy Moore, Monica D. Morrow, Walter J. Moss, Laura Nash, Charlie Naylon, Rickey W. Parham, Earlene Payne, Clara Pearson, Loretta Pickens, Eddie Pippen, Dorethea Rice, Johnnie M. Richardson, James D. River, Bob Russell, Barbara Samuel, Hattie Samuels, Jimmy Samuel Jr., Eddie C. Scott, Hazel Scott, Sallie J. Speight, Grace Summerville, Rhonda F. Tate, Carl Thomas, Angela Turner, Bernard Turner, Bertha Turner, Carrie Tur-

ner, Earnestine Wade, Prinnes Walker, Billie J. Wallace, Angela L. Waller, Bobby L. Waller, Marvin K. Walton, Jeanette Washington, Jesse J. Washington, Thelma Washington, Isreal Wesley, Tony White, Jessie O. Wiggins, Wanda J. Wiggins, Derrick Wilder, Burena P. Williams, Ch@arles Williams, Dora Williams, Gertrude Williams, Margaret Williams, Tracy L. Williams (Giles), Wade T. Williams, Letosha Winn–Bullock, Eddie Wood, Alice M. Woods, Fred Woods, and Chilanda Zellars.

C. Knox McLaney, III, McLaney & Assoc., Montgomery, AL, Bennie L. Jones, Jr., Bennie L. Jones Jr. & Associates, West Point, MS, for the Howard Group, Lana Holland, Darren Howard, Flora Howard, Orlando Oliver, and Vicki Oliver.

Jeffrey S. Daniel, Jackson & Shuttlesworth, PC, Birmingham, AL, W. Eason Mitchell, Lewis & Mitchell, LLC, Tuscaloosa, AL, Wilbur O. Colom, Shirley C. Byers, The Colom Law Firm PA, Columbus, MS, for the Brewer Group, Tracy Brewer, Anitera T. Bush, Marian Davis, Frankie L. Dent, Martha S. Hare, Angela F. Hill, Diane Hill, Lamonte Hood, Deborah E. Jones, Maurice Jones, Willie G. Manning, Mary L. Murry, Etta Rice, Mildred P. Smith, Willie E. Smith, Rufus Studavent, Beverly Walker, Shelia A. Walker, and Terry A. Williams.

Robert H. Turner, Marion, AL, for the Williams Group, Delois Braxton, Fredrick Braxton, John Braxton, Althea Cureton, David Fuller, Helen Green, Cedric D. Heard, William E. Huckabee, Doris Hunter, Sharon Jimerson, George Jones, Margaret Juniors, Cornelia Knox, Andrew O. Moore, Gwendolyn Moore, Jerry Moore Sr., Lorenzo Moore, Pearlie Nevels, Tammie M. Nevels, Reginald Phillips, Dannie Raby, Tommie Raby, Estella Scott, Lydia Sewell, Beverly Smith, Elizabeth Smith, Kathy Williams and Elizabeth Witherspoon, Mattie M. Harris.

Angela M. Barnett, Eufaula, AL, pro se.

Deborah L. Burch, Fort Mitchell, AL, pro se.

Melinda P. Burden, pro se.Mary Fields, Pine Apple, AL, pro se.

Henry Finklea, Oak Hill, AL, pro se.

Carrie M. Frost, Millry, AL, pro se.

Mary M. Green, Eufaula, AL, pro se.

Clara Griffin, Montgomery, AL, pro se.

James Harris, Livingston, AL, pro se.

Linda Hill, Silas, AL, pro se.

Tamala J. Hood, Grand Bay, Al, pro se.

Bernice Hunter, Eutaw, AL, pro se.

Willie E. Jackson, Eutaw, AL, pro se.

Otis C. Jennings, Geiger, AL, pro se.

Leroy Johnson, pro se.

James Jones, Coy, pro se.

Jessie H. Kenny, Newbern, AL, pro se.

Fred King, Midway, AL, pro se.

Willie J. Lawrence, Eufaula, AL, pro se.

Mary C. Lynn, Eufaula, AL, pro se.

Bernard McCoy, Jr., Eufaula, AL, pro se.

Linda D. McWilliams, pro se.

Evelyn Nelson, Clayton, AL, pro se.

Richard Palmer, Clayton, AL, pro se.

Frankie I. Payne, Emelle, AL, pro se.

John Payne, pro se.

Veronica Rudolph, Hayneville, AL, pro se.

Andrew Ruffin, pro se.

James Simmons, Union Springs, AL, pro se.

Phyllis Stevenson, Silas, AL, pro se.

Mattie Taylor, Fort Deposit, AL, pro se.

Christopher Thomas, pro se.

Clarence Walker, Eufaula, AL, pro se.

Patricia S. Williams, Camden, AL, pro se.

Sharon Huff–Williams, Camden, AL, pro se.

Grover Young, Eufaula, AL, pro se.

Mary J. Young, Eufaula, AL, pro se.

Warren C. Herlong, Jr., J. Casey Pipes, Helmsing, Leach, Herlong, Newman & Rouse, P.C., Mobile, AL, Peter S. Fruin, Catherine Wolter Main, Maynard, Cooper & Gale, P.C., Montgomery, AL, A. Inge Selden, III, Stephen C. Jackson, Carl Stanley Burkhalter, Maynard, Cooper & Gale, P.C., Birmingham, AL, for H&R Block, Inc., H&R Block Eastern Tax Services, Inc., H&R Block Tax Services, Inc., Block Financial Corp.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This matter is before the court on various motions to dismiss filed by the Defendants the JFS Group and Middle District Group (Doc. # 142), the Williams Group (Doc. # 144), the Brewer Group (Doc. # 177), as well as language from the Answers of the Abraham group (Doc. # 152), the Adams group (Doc. # 154), and the JTMH Group (Docs.# 160, 161), which the court has construed as motions to dismiss for lack of subject matter jurisdiction.

### II. STANDARD OF REVIEW

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990); *Hayden v. Blue Cross & Blue Shield of Alabama,* 855 F.Supp. 344, 347 (M.D.Ala. 1994). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *See Lawrence,* 919 F.2d at 1529. Under a factual attack, the court may weigh conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir. 1991). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

### III. FACTS AND PROCEDURAL HISTORY

This case stems from two national class actions settled in the Northern District of Illinois, *Zawikowski, et al. v. Beneficial National Bank, et al.,* No. 98–C–2178 and *Turner v. Beneficial National Bank,* No. 98–C–2550. Household Bank ("Household"), a federal savings bank chartered in Illinois, is the successor to Beneficial National Bank. In short, the class actions involved claims arising from loans made by the defendant bank to customers of H & R Block.[1] The loans were secured by anticipated tax refunds and offered as a means for the customers to obtain their refunds in a relatively short period of time, less the applicable interest and fees. The cases involved claims under the Truth in Lending Act, as well as various state law claims, and were certified as Fed.R.Civ.P. 23(b)(3) "opt-out" class actions. After settlement agreements were reached, a large number

---

1. H & R Block, Inc., H & R Block Eastern Tax Services, Inc., H & R Block Tax Services, Inc., and Block Financial Corporation (collectively, "Block") are intervenors in this case. For convenience, Household and Block are referred to as the "Plaintiffs" through most of this opinion.

of class members exercised their rights to opt-out.

This case is an action against all Alabama residents who opted-out of the class actions. Household brings suit under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, seeking a declaration of enforceability of the arbitration agreements allegedly executed by the defendants in their applications for the loans. Subsequent to the inception of this case many of the Defendants have filed suits in various state courts, which suits have been removed to this court.

## IV. *DISCUSSION*

■ The various motions to dismiss filed by the Defendant groups are premised on more or less the same contention—that this court lacks subject matter jurisdiction over this suit.[2] This case, Defendants argue, does not present a federal question, and moreover, although there is complete diversity among the parties, the amount in controversy requirement for diversity jurisdiction is not met. Disposing of this case on subject matter jurisdiction grounds, the court does not reach the Defendants' arguments regarding the propriety of their joinder under Rule 20.

### A. Federal Question

■ The DJA does not constitute an independent basis of federal question juris-

diction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). It does, however, "allow parties to precipitate suits [in federal court] that otherwise might need to wait for the declaratory relief defendant to bring a coercive action," provided there is an underlying ground for federal jurisdiction. *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir.1987) (citing *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 & n. 19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *abrogated on other grounds, King v. St. Vincent's Hospital*, 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). " '[I]f the federal issue [presented in a declaratory judgment action] would inhere in the claim on the face of the complaint that would have been in a traditional damage or coercive action [by the declaratory judgment defendant], then federal jurisdiction exists over the declaratory judgment action.' " *McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir.1986) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2767, at 745 (2d ed.1983)). In other words, "the declaratory judgment device allows a party 'to bootstrap its way into federal court' by bringing a federal suit that corresponds to one the opposing party might have brought." *Gulf States*, 811 F.2d at 1467.

2. Some of the Defendants have argued that this case does not present a justiciable case or controversy. At oral argument on January 25, 2002, the court indicated that it had little difficulty discerning a justiciable controversy, as a number of Defendants had already filed suit in state court. None of the Defendant groups took issue with this suggestion, and they have not reiterated the justiciability argument in their supplemental submissions to the court. Accordingly, the court understands Defendants to have conceded this point. In any event, the fact of concurrent litigation by

at least some of the Defendants clearly presents a justiciable "case" as contemplated by the Declaratory Judgment Act. *See, e.g., Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir.1984) (holding that where a party to an arbitration agreement is facing imminent litigation by another party to the agreement, it is entitled to a declaratory judgment as to whether it had an agreement with the prospective plaintiff to arbitrate disputes over the matter at issue).

■ Similarly, the FAA does not provide an independent basis of federal jurisdiction; rather, it "empowers a district court to issue an order compelling arbitration if the court, 'save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties.'" *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 177 F.3d 1212, 1223 n. 11 (11th Cir.1999) (quoting U.S.C. § 4 (1994)). Accordingly, it is appropriate for the court to "look through" the Plaintiffs' request for a declaration of the validity and enforceability of the arbitration agreements to determine whether a federal question inheres in the underlying dispute.[3] *Id.*

The Plaintiffs point to several facts in support of their contention that the underlying dispute in this case involves claims "arising under" federal law: (1) the *Zawikowski* and *Turner* litigations, out of which the Defendants in this case opted, included claims under the Truth in Lending Act, the National Bank Act, and RICO, (2) many other refund anticipation loan suits have involved federal claims, and (3) the "Middle District" group of Defendants in this case have asserted usury claims in state court, which this court has already determined to be necessarily federal in nature pursuant to the "complete preemption doctrine," *see Anderson v. H & R Block, Inc.*, 132 F.Supp.2d 948 (M.D.Ala. 2000) (appeal pending). Since the Defen-

dants might have asserted such claims in a future suit, Plaintiffs argue, this court has subject matter jurisdiction pursuant to the DJA and 28 U.S.C. § 1331. The Defendants contend, however, that they do not, nor did they, intend to pursue any claims arising under federal law. Accordingly, Defendants argue, the court does not have subject matter jurisdiction simply because they *could* have asserted federal claims against the Plaintiffs.

Plaintiffs have cited a number of cases, and the court's own research has revealed a few others, that seem at first blush to support their position. *See Gulf States*, 811 F.2d 1464 (11th Cir.1987); *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir.2001); *TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir.1999); *Standard Insurance Co. v. Saklad*, 127 F.3d 1179 (9th Cir.1997); *Cardtoons v. Major League Baseball Players*, 95 F.3d 959 (10th Cir.1996); *W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188 (2d Cir.1987); *Energy Recovery, Inc. v. Hauge*, 133 F.Supp.2d 814 (E.D.Va.2000); *Major League Baseball Properties, Inc. v. Price*, 105 F.Supp.2d 46 (E.D.N.Y.2000); *California Casualty & Fire Ins. Co. v. Brinkman*, 50 F.Supp.2d 1157 (D.Wyo.1999). Plaintiffs essentially argue that these cases stand for the proposition that where a declaratory judgment defendant could have asserted a federal claim against the declaratory judgment plaintiff, subject matter jurisdiction exists

---

**3.** Counsel for some of the Defendants cites *Bellsouth Telecommunications, Inc. v. Worldcom Technologies, Inc.*, 278 F.3d 1223, 1242–43 (11th Cir.2002), as authority for the proposition that it is the nature of the remedy sought that determines whether a declaratory judgment action involves a substantial question of federal law. In that case, a declaratory judgment plaintiff sought resolution of issues arising under state law, i.e. anticipated breach of contract claims, and it was of no moment to the court that the contracts at issue were mandated under federal law. *See*

*id.* In this case, however, the Plaintiffs seek a determination that their arbitration agreements are enforceable. The FAA has been interpreted to provide that a party may seek such a determination where the underlying dispute involves a federal claim or issue sufficient to create subject matter jurisdiction in the court. *See Downing*, 725 F.2d at 195. Accordingly, the court must analyze the underlying dispute, rather than the nature of the relief sought. *See Tamiami*, 177 F.3d at 1223 n. 11.

over the declaratory judgment action pursuant to 28 U.S.C. § 1331. Moreover, Plaintiffs contend, a district court in the Fifth Circuit recently held it had federal question jurisdiction over a case materially identical to the case at bar. *See House-hold Bank v. H&R Block, Inc.,* 2001 WL 737532 (S.D.Miss.2001).

While all of these cases are somewhat similar and may appear to support the position advanced by the Plaintiffs, they can be divided into two groups with respect to what has turned out to be an important point of law in federal jurisdiction-the construction of a rather unassuming passage in *Franchise Tax Board:*

> Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.

463 U.S. at 19, 103 S.Ct. 2841. Several of the aforementioned courts have interpreted the *Franchise Tax Board* passage to support the Plaintiffs' position-that a federal court has subject matter jurisdiction over a declaratory judgment action where the defendant *could* have brought a federal claim. *See Drain,* 237 F.3d at 370–71 ("Because [the declaratory judgment plaintiff's] complaint ... seeks declaratory relief on a matter for which [the declaratory judgment defendant] *could* bring a coer-

cive action ... arising under federal law, we conclude the district court possessed subject matter jurisdiction pursuant to § 1331.") (emphasis added); *TTEA,* 181 F.3d at 682 ("If [a federal statute] gave the [defendant] a right to sue the [plaintiff], we would hold that TTEA could sue for declaratory judgment that the [defendant] stated no claim."); *Saklad,* 127 F.3d at 1181 ("A person may seek declaratory relief in federal court if the one against whom he brings his action *could* have asserted his own rights there.") (emphasis added); *Cardtoons,* 95 F.3d at 965 ("Because [the defendant] *could* have brought a federal Lanham Act claim as part of a well-pleaded complaint against [the plaintiff], the district court had federal question jurisdiction over this declaratory judgment action.") (emphasis added).[4]

This court must respectfully disagree with the *Drain, TTEA, Saklad,* and *Card-toons* courts' characterizations of the relevant passage from *Franchise Tax Board.* The language employed by the Supreme Court was, on this court's reading, quite clear: a court will have subject matter jurisdiction over a declaratory judgment action where the anticipated coercive action "would *necessarily* present a federal question." 463 U.S. at 19, 103 S.Ct. 2841 (emphasis added). Accordingly, this court understands the *Franchise Tax Board* passage to stand for the more limited proposition that where a declaratory judg-

---

4. At oral argument, the Plaintiffs advanced the position that their "reasonable apprehension" of imminent litigation involving federal claims should suffice to invest this court with subject matter jurisdiction. In *Cardtoons,* the case relied upon by Plaintiffs for this assertion, the court stated: "Whether the [declaratory judgment defendant] *threatened* to bring a federal claim ... is immaterial to the *controversy* requirement, which is satisfied so long as [there was] a reasonable apprehension on the part of [the declaratory judgment plaintiff] of the imminence of suit." 95 F.3d 959, 966 (emphasis added). Accordingly, it is

clear that the "reasonable apprehension" analysis is applicable to the question of whether there is a justiciable controversy under the DJA, not the character of that controversy. The court merely held that an actual threat of bringing suit was not necessary to create a controversy, so long as there was reasonable apprehension that one would be filed. Plaintiffs would have it that their subjective perception of the situation should create subject matter jurisdiction in the court. This position is not supported by *Cardtoons,* nor by any other case of which the court is aware.

ment defendant's anticipated coercive action would *have* to be federal in nature, the court would have federal question jurisdiction.[5]

In addition to the plain meaning of the language in *Franchise Tax Board,* the narrower interpretation is supported by a close reading of several of the cases actually cited by the Plaintiffs, and by a comparison of this issue with a closely-related area of the law-federal question jurisdiction in the context of removal. In *Gulf States,* the Eleventh Circuit formulated the test for whether federal question jurisdiction exists in a declaratory judgment action using language seemingly consistent with Plaintiffs' position: "[t]o decide whether the well-pleaded complaint for declaratory relief in the present case properly asserts a substantial federal claim, we must determine whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court." 811 F.2d at 1467. The court held, however, that "[t]he coercive action in this case *would* be a suit by [the declaratory judgment defendant] under the Veterans' Reemployment Rights Act . . . ." *Id.* (emphasis added); *see also, Energy Recovery,* 133 F.Supp.2d at 819 (a federal question would necessarily have been presented by a coercive action to enforce a patent); *Major League Baseball Properties,* 105 F.Supp.2d at 54 (federal question would have arisen in a threatened

RICO suit). Because the anticipated suit by the declaratory judgment defendant "clearly would present a federal cause of action," the *Gulf States* court held that there was subject matter jurisdiction over the case. *Id.* While some of the language in *Gulf States* might be read to support the Plaintiffs' position, the holding of the case is consistent with the narrower reading suggested by the use of the word of "necessarily" in *Franchise Tax Board. Id.; but see H&R Block,* 2001 WL 737532, \*\*5–6 (S.D.Miss.) (relying on the "could have been brought" language of *Gulf States* ).

Similarly, the Second Circuit held that because anticipated "state law possessory actions *would necessarily* raise a federal question" as to the declaratory judgment defendant's current right of possession, subject matter jurisdiction existed in the case. *W. 14th St. Comm. Corp.,* 815 F.2d at 195 (emphasis added). The court explained that "under *Franchise Tax Board* the question is not whether the declaratory judgment defendant would necessarily bring a federal action, but rather *if it brought an action* would such action necessarily have raised a federal question." *Id.* (emphasis in original).

■ The narrower conception of federal question jurisdiction in the declaratory judgment context is also supported by federal question jurisprudence in the removal

---

5. As the Supreme Court pointed out in its later case of *Textron Lycoming Reciprocating Engine Div. v. United Automobile, Aerospace and Agricultural Implement Workers of America,* the case which it had cited in *Franchise Tax Board* as authority for the passage in question was a declaratory judgment action by an alleged patent infringer. *See* 523 U.S. 653, 660 n. 4, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998). In *Franchise Tax Board,* the Court noted that "federal courts have consistently adjudicated suits by alleged patent infringers to declare a patent invalid, on the theory that an infringement suit by the declar-

atory judgment defendant *would raise a federal question over which the federal courts have exclusive jurisdiction."* 463 U.S. at 19 n. 19, 103 S.Ct. 2841 (citing *E. Edelmann & Co. v. Triple–A Specialty Co.,* 88 F.2d 852 (7th Cir. 1937)) (emphasis added). Interestingly, the hypothetical employed in Wright, Miller & Kane's discussion of federal question jurisdiction in the context of a declaratory judgment action is also an anticipated patent infringement suit. *See* 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* § 2767, at 650 (3d ed.1998).

context. It is now axiomatic that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). The well-pleaded complaint rule "makes the plaintiff the master of his claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913)) ("Of course, the party who brings a suit is master to decide what law he will rely upon"); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Great Northern R. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) ("The plaintiff may by the allegations of his complaint determine the status with respect to removability of a case"); *Giddens v. Hometown Fin. Servs.*, 938 F.Supp. 801, 804 (M.D.Ala.1996) (removal jurisdiction cannot be maintained "simply because a plaintiff could have asserted a federal claim instead of or in addition to the state claim advanced").

■ The position of the Plaintiffs would eviscerate the long-standing principle that the plaintiff is the master of his claim: if a declaratory judgment plaintiff may seek relief in federal court based on the fact that the declaratory judgment defendant *may* assert a federal claim, even though he may also limit his coercive action to only state claims, that is tantamount to allowing a declaratory judgment plaintiff to force the other party to litigate a claim that he may have no intention of pursuing. This result would be incongruous with the well-worn principle discussed in *Caterpillar*, and in effect might spur a "race to the courthouse"-whoever files suit first could determine whether subject matter jurisdiction exists. For the foregoing reasons, this court concludes that while the DJA does allow a plaintiff to precipitate a suit based on federal law, he may only do so where the anticipated coercive action would *of necessity* arise under federal law. *Franchise Tax Board*, 463 U.S. at 19, 103 S.Ct. 2841.

■ In this case, the Defendants have disclaimed any right to relief based on federal law. They vehemently insist that the only claims they wish to pursue are those based on state law.[6] While this court held that the "Middle District" Defendants have asserted federal claims under the National Bank Act by virtue of the "complete preemption" doctrine, this exception may be inapplicable to the remaining Defendants.[7] Accordingly, the court

---

**6.** In their supplemental brief, Household cites *Janakes v. United States Postal Service*, 768 F.2d 1091, 1095 (9th Cir.1985), for the proposition that "parties cannot by stipulation or waiver grant or deny subject matter jurisdiction." This, Household argues, prevents the Defendants from avoiding federal jurisdiction by now disclaiming all federal causes of action. *Janakes* is, however, inapposite to this case. In *Janakes*, the declaratory judgment defendant attempted to disclaim all federal statutory remedies on appeal. Here, Defen-

dants insist they never intended to pursue any federal remedies in the first place.

**7.** Because this court has held that the "Middle District" Defendants have asserted what amounts to a federal claim, it could be argued that at least the court has federal question jurisdiction with regard to the declaratory relief sought with respect to them. The issue of whether those Defendants' claims are completely preempted by the National Bank Act is currently before the Eleventh Circuit Court of Appeals. The court finds that it would be

finds that a federal question did not necessarily inhere in the well-pleaded complaints of the remaining Defendants' anticipated and concurrent coercive actions, and therefore federal question jurisdiction does not exist in this case.

## B. Diversity Jurisdiction

Plaintiffs also contend that the court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. The Defendants concede that there is complete diversity among the parties, but argue that the amount in controversy requirement is not met as to each Defendant. The Plaintiffs have produced what they deem to be evidence that at the time this suit was commenced, it was apparent that the potential claims at issue would be for more than the jurisdictional minimum of $75,000. The Defendants counter that they never intended to seek more than the jurisdictional amount, and furthermore disclaim the right to damages above the jurisdictional amount.

This case presents a difficult question: to what does the court look as the measure of the amount in controversy? The Plaintiffs contend that the measure should either be the amount of damages that the Defendants allegedly intended to seek after opting out of the Illinois class actions, or the "value of the object of the litigation," i.e. the value to the Plaintiffs of a declaration that their arbitration agreements are enforceable. The Defendants have apparently acquiesced to the Plaintiff's first position, asserting that they do

not and did not intend to seek more than $75,000.

██ It seems clear that in cases brought to compel arbitration under the FAA, where the defendants have already allegedly breached the arbitration agreement, the measure of the amount in controversy for diversity jurisdiction purposes is the value of the stakes in the arbitration sought. *See, e.g., MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 945 (11th Cir. 1999) ("In its petition to compel arbitration, the [plaintiff] alleges, and [the defendant] does not dispute, that ... the amount in controversy exceeds $75,000. 'That plainly satisfies 28 U.S.C. § 1332's demands.'") (quoting *First Franklin Fin. Corp. v. McCollum,* 144 F.3d 1362, 1363 (11th Cir.1998)). In *Webb v. Investacorp, Inc.,* the Second Circuit held that an action seeking a declaration of the non-enforceability of an arbitration agreement was sufficiently analogous to a suit to compel arbitration to warrant application of the "amount at stake in the arbitration" analysis for a determination of the amount in controversy. *See* 89 F.3d 252, 256–57 (5th Cir.1996); *see also Wheat First Securities, Inc. v. Green,* 1992 WL 515343 at *2 (N.D.Ga.1992) ("[w]here the central question at issue is whether arbitration is required, the amount of the underlying arbitration claim determines the amount in controversy"). Accordingly, it seems proper that the court should look to the value of the Defendants' claims in arbitration, if the court were to determine that

imprudent to afford declaratory relief at this point because the prior holding of this court, if upheld by the Eleventh Circuit, will undoubtedly allow the Plaintiffs an opportunity to have the arbitration issue settled upon remand to this court. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (recognizing the discretion of federal courts to deny declaratory relief even where subject matter jurisdic-

tion exists). Also, during the pendency of this litigation many of the Defendants have filed state court actions. Several of these cases have been removed on the same theory as that advanced in the *Anderson* case. If it turns out that these cases were properly removed, the Plaintiffs will have the same opportunity to press the arbitration issue in federal court.

the arbitration agreements are specifically enforceable. *See id.*

■ In support of their contention that the anticipated claims by the Defendants in this case would be for more than $75,000, the Plaintiffs have adduced a demand letter from an attorney in another state who does not represent any of the Defendants in this case, and an affidavit from another out-of-state attorney who also represents none of the Defendants in this case, stating his intention to seek punitive damages on behalf of his clients. *See* Exhs. B,C to Complaint. The court fails to see how these submissions are relevant to the question of the extent of damages allegedly sought by the Defendants to this action. While these communications may have caused the Plaintiffs to brace themselves for the anticipated onslaught of litigation, the court is not persuaded that this evidence is relevant to the dispute actually before the court. Furthermore, the Defendants have expressly disclaimed any right to damages in excess of $75,000, in this proceeding as well as in their concurrent state court actions.[8] Finally, it appears that the class members in the *Zawikowski* and *Turner* litigations settled for a pro rata amount of approximately $15 each. Based on these considerations, the court must conclude that as to each Defendant, the jurisdictional amount would not be at stake in an arbitration of their claims, and neither would it be at stake in court if arbitration were not required.

In the alternative, the Plaintiffs advance the theory that, in an action for declaratory relief, the amount in controversy is to be determined by the "value of the object of the litigation." *See Hunt v. Washington State Apple Ad. Comm'n,* 432 U.S. 333, 345, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.,* 120 F.3d 216, 218 (11th Cir. 1997). Block asserts that "a declaration by this Court that the arbitration provisions contained in the contracts are enforceable is clearly worth more than $75,000 to Block." Block Brief at 15. Block contends that having to litigate this issue in a number of fora, "court by court," would cause it to incur a great deal of expense. Consequently, Block argues, the value of the object of the litigation, from its perspective, "clearly satisfies the amount in controversy requirement." *Id.* at 16.

■ The court is not persuaded by Block's argument. It is true that in *Ericsson,* the Eleventh Circuit made clear that in declaratory judgment actions the amount in controversy is to be measured from the declaratory judgment plaintiff's perspective. *See* 120 F.3d at 219–220. The amount in controversy, however, is the value of the *object* of the litigation, in other words, the pecuniary consequences to the plaintiff resulting from a grant of the injunction or declaration sought. *See id.* at 221; *Leonard v. Enterprise Rent A Car,* 279 F.3d 967, 973 (11th Cir.2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation *that would flow to the plaintiffs if the injunction were granted.*") (emphasis

---

8. In *Cotton States Mutual Insurance Co., Inc. v. Peacock,* 949 F.Supp. 823 (M.D.Ala.1996), this court determined that it was proper to allow declaratory judgment defendants to disclaim damages at or above the jurisdictional amount where it was unclear as to the amount of damages they were seeking in state court. In spite of Plaintiffs' arguments to the

contrary, this case is directly on point here. Since the amount of damages sought by the Defendants was unknown at the time this suit was filed, it is proper for the court to consider their disavowal of damages greater than the jurisdictional amount as evidence in determining whether the amount in controversy is met. *See id.*

added). If the *Ericsson* analysis is applicable, the amount in controversy in this case would be the pecuniary consequences to the Plaintiffs of a declaration that their arbitration agreements are enforceable. *See id.* What these consequences would be is highly speculative. It is not clear that the state courts in which the Defendants have sued will not enforce the arbitration agreements, nor is it certain that arbitration will yield a better result for the Plaintiffs than settlement negotiations or disposition of the claims in the state courts. Accordingly, and considering that the Plaintiffs bear the burden of establishing jurisdiction, the court determines that, even if the *Ericsson* analysis is applicable, the amount in controversy is too speculative to support subject matter jurisdiction over this case. *See id.* at 221–22 (the value of the injunctive relief sought "is, in our view, too speculative and immeasurable to satisfy the amount in controversy requirement").

Furthermore, Block's assertion that the value of the object of the litigation should be measured by the incidental benefits and savings that would be achieved by packaging the litigation of the arbitration issue in this one suit is not supported by citation to any case law on point. Wright, Miller, & Kane have commented that:

> It is well-settled by numerous judicial decisions by the Supreme Court, the courts of appeal, and countless district courts that the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit. . . .
>
> A very important corollary to the measurement principle is that whatever the collateral effects a decree or judgment might have by virtue of stare decisis,

collateral estoppel, or any other impact on the rights of third parties, they cannot be taken into account.

14B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 3702 at 81 (3d ed.1998). The court finds that, by the same token, and in the absence of citation of authority to the contrary, it is inappropriate for a court to consider the transaction costs incident to the enforcement of a particular right as the amount in controversy. The value of a right and the cost of protecting it are not the same. *See id.*

## V. CONCLUSION

For the foregoing reasons, the court determines that subject matter jurisdiction does not exist in this case. As the Plaintiffs have failed to demonstrate that this court has either diversity or federal question jurisdiction over this case, the court concludes that Defendants' various motions to dismiss are due to be GRANTED. A separate order will be entered in accordance with this memorandum opinion.

## ORDER

In accordance with the Memorandum Opinion entered in this case on this day, it is hereby ORDERED as follows:

1. The Motions to Dismiss filed by all Defendants other than the Middle District Group are GRANTED, without prejudice, on the basis of lack of subject matter jurisdiction.

2. The Motion to Dismiss filed by the Middle District Group is GRANTED, without prejudice, on the basis of a prior suit pending between the parties in which the issues raised by this action may be litigated.

3. Any other outstanding motions are DENIED without prejudice.

4. This action is DISMISSED without prejudice.[1]

---

1. Several Defendants are unrepresented and have failed to respond to the Complaint.

Since the court must consider its jurisdiction

5. Costs are taxed against the Plaintiff and the Plaintiff–Interveners.

on its own, this action is DISMISSED without prejudice as to them, as well as moving Defendants, for lack of subject matter jurisdiction.