WILLIAM "SKY" KING *v.* ST. VINCENT'S HOSPITAL

No. 90–889.   Argued October 16, 1991—Decided December 16, 1991

SOUTER, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the case.

*Amy L. Wax* argued the cause for petitioner. With her on the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Shapiro,* and *Michael Jay Singer.*

*Harry L. Hopkins* argued the cause and filed a brief for respondent.

JUSTICE SOUTER delivered the opinion of the Court.

The issue in this case is whether 38 U. S. C. § 2024(d), a provision of what is popularly known as the Veterans' Reemployment Rights Act, implicitly limits the length of military service after which a member of the Armed Forces retains a right to civilian reemployment. We hold that it does not.

I

In June 1987, petitioner William "Sky" King,[1] a member of the Alabama National Guard,[2] applied to become command sergeant major in the Active Guard/Reserve (AGR) program, and thereby undertook to serve the 3-year tour of duty required by Army regulations[3] of the person holding that position.[4] The next month King learned of his selection and advised his employer, respondent St. Vincent's Hospital, that he had accepted the Guard's 3-year full-time appointment.

---

[1] How and why petitioner's nickname claimed a place in the caption of this case is a mystery of the record.

[2] The Alabama National Guard is a militia under state control except under certain constitutionally defined circumstances. See U. S. Const., Art. I, § 8, cl. 15. Because Congress nonetheless is authorized generally to "provide for organizing, arming, and disciplining" the Guard, cl. 16, federal law is at issue in this case.

[3] Department of Army Reg. 135–18, ch. 2, § II, 2–9. Length of periods of AD or FTD (1985).

[4] The AGR program was established by Congress in 1980. See Department of Defense Authorization Act, 1980, § 401(b), 93 Stat. 807.

He requested a leave of absence from his hospital job as ostensibly guaranteed by the Act and reported for military duty, as ordered, on August 17. Several weeks later, St. Vincent's advised him that his request was unreasonable and thus beyond the Act's guarantee.

After so informing King, St. Vincent's took the further step of bringing a declaratory judgment action in the United States District Court for the Northern District of Alabama to settle the issue whether the applicable terms of the Act provided reemployment rights after tours of duty as long as King's. Although the court held that service in the AGR program carried protection under § 2024(d),[5] it nonetheless rendered declaratory judgment for St. Vincent's on the ground that the request for a 3-year leave of absence was *per se* unreasonable. In imposing a test of reasonableness on King's request, the District Court was following the opinion of the Eleventh Circuit in *Gulf States Paper Corp.* v. *Ingram*, 811 F. 2d 1464, 1468 (1987), which had in turn interpreted a Fifth Circuit case as requiring that leave requests for protection under § 2024(d) must be reasonable. See *Lee* v. *Pensacola*, 634 F. 2d 886, 889 (1981).[6] A panel of the Eleventh Circuit affirmed, with two judges agreeing with the District Court that guaranteeing reemployment after a 3-year tour of duty would be *per se* unreasonable, thereby putting King outside the protection of § 2024(d). 901 F. 2d 1068 (1990). Judge Roney concurred separately that King's request was unreasonable, but dissented from the creation of a *per se* rule. *Id.*, at 1072–1073.

---

[5] Section 2024(d) covers AGR participants. See Veterans' Rehabilitation and Education Amendments of 1980, § 511(b), 94 Stat. 2207. Neither party contests the applicability of § 2024(d) to King's leave request.

[6] *Lee* is binding precedent in the Eleventh Circuit, as it was decided on January 20, 1981, before the Eleventh Circuit was carved out of the Fifth. See *Bonner* v. *Prichard*, 661 F. 2d 1206, 1207 (CA11 1981) (en banc) (Fifth Circuit decisions handed down as of Sept. 30, 1981, adopted as Eleventh Circuit precedent).

Like the Fifth and Eleventh Circuits, the Third has engrafted a reasonableness requirement onto § 2024(d). *Eidukonis* v. *Southeastern Pennsylvania Transportation Authority*, 873 F. 2d 688, 694 (1989).[7] The Fourth Circuit, on the other hand, has declined to do so. *Kolkhorst* v. *Tilghman*, 897 F. 2d 1282, 1286 (1990), cert. pending, No. 89–1949. We granted certiorari to resolve this conflict, 498 U. S. 1081 (1991), and now reverse the judgment of the Eleventh Circuit.

## II

We start with the text of § 2024(d), see *Schreiber* v. *Burlington Northern, Inc.*, 472 U. S. 1, 5 (1985), which is free of any express conditions upon the provisions in contention here:

> "[Any covered person] shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from a period of such . . . [duty] . . . such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes." 38 U. S. C. § 2024(d).

Thus, the Fourth Circuit could call the subsection's guarantee of leave and reemployment "unequivocal and unqualified," *Kolkhorst, supra,* at 1286, and the Eleventh Circuit itself observed that the subsection "does not address the

---

[7] See also *Lemmon* v. *County of Santa Cruz,* 686 F. Supp. 797, 802 (ND Cal. 1988) (adopting reasonableness requirement set forth in *Lee* v. *Pensacola,* 634 F. 2d 886 (CA5 1981)); *Bottger* v. *Doss Aeronautical Servs., Inc.,* 609 F. Supp. 583, 585 (MD Ala. 1985) (following *Lee*); *Anthony* v. *Basic Am. Foods, Inc.,* 600 F. Supp. 352, 354–355 (ND Cal. 1984) (both parties accepting reasonableness test).

'reasonableness' of a reservist's leave request." *Gulf States, supra,* at 1468.

Although St. Vincent's recognizes the importance of the statute's freedom from provisos, see Brief for Respondent 9, it still argues that the text of subsection (d) favors its position. The hospital stresses that "leave" as used in subsection (d) is to be enjoyed by an "employee," whose status as such implies that the employment relationship continues during the absence. Accordingly, employees protected under subsection (d) are "returned" to their positions after military service is over, while reservists protected by other subsections of § 2024 are "restored" to theirs,[8] the difference in language attesting that the former remain employees, while the latter cease to be such during their time away. The hospital argues that the very notion of such a continuing relationship is incompatible with absences as lengthy as King's, and finds that conclusion supported by the provisions speaking to the actual mechanics for resuming employment. While the reservists subject to other subsections must reapply for employment, those protected by subsection (d) are allowed, and indeed required, to "report for work at the beginning of the next regularly scheduled working period" after the tour of military duty expires. The hospital posits the impracticality of expecting an employee to report for work immediately after a 3-year absence, "to take his apron off the peg," as the hospital's counsel put it, and go back to work as if nothing had happened. It also makes much of the difficulties of filling responsible positions that would follow if their incumbents could be turned out so abruptly after serving for so long, upon the prior incumbent's equally abrupt return.

---

[8] Subsections (a), (b), (c), and (g) identify other classes of reservists, enlistees, and those called to active duty, and make applicable to those classes the reemployment protection offered inductees pursuant to 38 U. S. C. § 2021(a)(2)(A)(i), namely, "restor[ation]" to the formerly held position "or to a position of like seniority, status, and pay."

To these arguments, and others like them that we do not set out at length, two replies are in order. We may grant that the congressionally mandated leave of absence can be an ungainly perquisite of military service, when the tour of duty lasts as long as King's promises to do, and if we were free to tinker with the statutory scheme we could reasonably accord some significance to the burdens imposed on both employers and workers when long leaves of absence are the chosen means of guaranteeing eventual reemployment to military personnel.

But to grant all this is not to find equivocation in the statute's silence, so as to render it susceptible to interpretive choice. On the contrary, the verbal distinctions underlying the hospital's arguments become pallid in the light of a textual difference far more glaring than any of them: while, as noted, subsection (d) is utterly silent about any durational limit on the protection it provides, other subsections of § 2024, protecting other classes of full-time service personnel, expressly limit the periods of their protection. Thus, § 2024(a) currently gives enlistees at least four years of reemployment protection, with the possibility of an extension to five years and even longer. Again, for example, § 2024(b)(1) extends protection to those entering active duty (except for "the purpose of determining physical fitness [or] for training") for at least four years, with the possibility of a further extension beyond that.[9] Given the examples of affirmative

---

[9] As a counterexample, St. Vincent's might cite § 2024(g), providing reservists ordered to active duty for not more than 90 days with a guarantee of reemployment extending through their period of duty. Standing alone with subsection (d), this provision might suggest that a guarantee extending through the duration of a reservist's tour of active duty must be express; but the examples of specific durational limitations described in the text above show that Congress knew how to provide limits on its benefits when that was the intent. Even if the express examples unsettled the significance of subsection (d)'s drafting, however, we would ultimately read the provision in King's favor under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries'

limitations on reemployment benefits conferred by neighboring provisions, we infer that the simplicity of subsection (d) was deliberate, consistent with a plain meaning to provide its benefit without conditions on length of service.

In so concluding we do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole, see *Massachusetts* v. *Morash*, 490 U. S. 107, 115 (1989), since the meaning of statutory language, plain or not, depends on context. See, *e. g., Shell Oil Co.* v. *Iowa Dept. of Revenue*, 488 U. S. 19, 26 (1988). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used . . . ." *NLRB* v. *Federbush Co.*, 121 F. 2d 954, 957 (CA2 1941) (L. Hand, J.) (quoted in *Shell Oil, supra,* at 25, n. 6).[10]

St. Vincent's itself embraces the same principle (though, we think, by way of misapplication) by countering the preceding textual analysis with a structural analysis of its own, in which it purports to discern a significant hierarchy of reemployment rights in the statutory scheme. As the hospital reads § 2024 together with its companion provisions, the most generous protection goes to inductees, whose reemployment rights are unqualified by any reference to duration of service.[11] Enlistees and those entering active duty in response to an order or call come next with protection so long

---

favor. *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, 285 (1946). We will presume congressional understanding of such interpretive principles, *e. g., McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 496 (1991) ("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction").

[10] See also *United States* v. *Hartwell*, 6 Wall. 385, 396 (1868) (in construing statute court should adopt that sense of words which best harmonizes with context and promotes policy and objectives of legislature); see generally 2A C. Sands, Sutherland on Statutory Construction § 46.05 (rev. 4th ed. 1984).

[11] See 38 U. S. C. § 2021.

as their tours of duty do not exceed five years;[12] and at what the hospital claims to be "the bottom of the employment rights scheme," Brief for Respondent 16, fall the reemployment rights protected by § 2024(d). *Ibid.* It is not unnatural, on this view, that the least protected veterans should be subject to an imprecise limit of reasonableness on the length of voluntary duty giving rise to their job protection.[13]

But the hospital's argument does not convince. While it invokes the significance of context, its conclusion rests on quite circular reasoning. There are, as we have just pointed out, differences of treatment among the various classes of service people protected by various provisions of the statute. But differences do not necessarily make hierarchies, and the differences revealed by the hospital's examples do not point inexorably downward without assuming the point at issue, that the reservists subject to training duty within the meaning of subsection (d) really do get less protection than inductees, enlistees, and so on, covered by other provisions. Without such an assumption there are simply differences of treatment, to be respected by limiting protection where the text contains a limit and leaving textually unlimited protection just where the Congress apparently chose to leave it. Because the text of § 2024(d) places no limit on the length of a tour after which King may enforce his reemployment rights against St. Vincent's, we hold it plain that no limit was implied.[14]

---

[12] See 38 U. S. C. §§ 2024(a), 2024(b)(1). The basic limit here is four years, with an additional year of protection if the Government requests additional service.

[13] The hospital claims to find additional support for this declension in the legislative history of § 2024(d), relying heavily on excerpts from the House and Senate Reports on the 1960 bill that eventuated in the current statute. Brief for Respondent 17–18, and n. 31.

[14] "When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." *Rubin* v. *United States*, 449 U. S. 424, 430 (1981) (internal quotation marks omit-

## III

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

---

ted). Such circumstances are not present here; as we indicate below, the hospital's invocation of legislative history does not make its case.

The hospital relies heavily on 1960 Senate and House Reports citing short-term leaves as covered by § 2024. See S. Rep. No. 1672, 86th Cong., 2d Sess., 2; H. R. Rep. No. 1263, 86th Cong., 2d Sess., 6; see also Brief for Respondent 17, n. 31. While this history may demonstrate that in 1960 § 2024(d) applied to short leaves, the significance of this is surely blunted by Congress' undoubted intention 20 years later to apply the subsection to long leaves when it brought AGR participants under § 2024(d). See Veterans' Rehabilitation and Education Amendments of 1980, § 511(b), 94 Stat. 2207.

The inference that Congress intended no such limits as the hospital espouses is buttressed by a joint House-Senate Conference Committee's disapproval of a shift in the position taken by the Department of Labor on this issue. Before 1981 the Department took the position we adopt. See United States Department of Labor, Veterans' Reemployment Rights Handbook 111 (1970). After *Lee* v. *Pensacola,* 634 F. 2d 886 (CA5 1981), the Department adopted the different view that § 2024(d) protection applied only to leaves of 90 days or less. See H. R. Rep. No. 97–782, p. 8 (1982). Subsequently, a joint House-Senate Conference Committee Report announced that the House and Senate Veterans' Affairs Committees "d[id] not believe that the 90-day limit [was] well-founded either as legislative interpretation or application of the pertinent case law." 128 Cong. Rec. 25513 (1982). Coming as it did in the aftermath of Congress' decision to place AGR participants under the coverage of § 2024(d), this statement is decidedly at odds with the hospital's position, and confirms the conclusion that enactment of the AGR program was not intended to modify the ostensibly unconditional application of § 2024(d).