Norman D. **GRAHAM**, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
Respondent.

No. 97–3339.

United States Court of Appeals,
Federal Circuit.

Sept. 17, 1997.

Norman D. Graham, Pro Se, San Antonio, TX, submitted on the brief.

Anne M. Richard, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, submitted on the brief for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director. Of counsel on the brief was Murray M. Meeker, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before ARCHER, Chief Judge, RICH, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Norman Graham petitions for review of the April 18, 1997 final decision of the Merit Systems Protection Board affirming the Office of Personnel Management's (OPM's) refusal to recompute the value of Graham's retirement annuity. Docket No. DA0831960336I–1. Because Graham has not shown that the board erred in concluding that 38 U.S.C. § 2024(d) does not apply to him, we affirm.

## BACKGROUND

Norman Graham, a reservist, was employed by the Department of the Air Force as a civilian from October 1962 until November 1980, at which time he was ordered to leave his position to pursue a forty-eight month tour of active duty. The Air Force's personnel records initially reflected that although Graham had separated from the Air Force, he was entitled, upon meeting certain conditions, to restoration in an appropriate position, provided that his tour of military service did not exceed four years. In 1984, his records were changed to reflect that he was on a non-pay furlough status, the change being made to protect Graham's "restoration rights under Title 38, U.S.Code."[1] Graham did not return to civilian employment within four years and instead remained on active duty until 1987. In 1986, the Air Force terminated Graham's employment, effective November 1980, relying on Federal Personnel Manual Supp. 831–1, Subch. S3, ¶ S3–6 (1981) ("regulation")[2] and citing his failure to return from military service.

Upon completion of his military service in 1987, Graham obtained employment with the Internal Revenue Service ("IRS"). Graham worked at the IRS until he retired in August 1989, at which time he was paid at the GS–6 level. Upon his retirement, the OPM computed Graham's retirement annuity based on his Air Force and IRS personnel records. Graham did not then and does not now assert that the OPM's computation was incorrect given the content of his personnel records at that time.

On November 29, 1994, Graham requested that the OPM recompute his retirement annuity based upon the Supreme Court's decision in *King v. St. Vincent's Hospital*, 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). Graham argued that the *King* decision held that the length of military service during which a reservist retains a right to civil reemployment is unlimited. Accordingly, Graham argued that the regulation under which he was terminated was "invalid" in light of *King*. Thus, Graham asserted that he should not have been terminated by the Air Force, and should have been restored to the same position that he left in 1980, or its

1. *See* 38 U.S.C. §§ 2021–2027 (1988) (codified as amended at 38 U.S.C.A. §§ 4301–4333 (1991 & Supp.1997)).

2. Federal Personnel Manual Supp. 831–1, Subch. S3, ¶ S3–6 (1981) provides:
   Maximum furlough period allowed: A civilian employee subject to the retirement system who has left or leaves a position to enter the Armed Forces of the United States during the period of any war or national emergency is not considered, for retirement purposes, as separated from a civilian position but is considered to be on military furlough[.] The person is not, however considered as retaining a civilian position beyond ... the expiration of five years of military furlough while in the armed forces[.] This is true whether the action is recorded by the employing office as a furlough or as a separation.

equivalent. Graham also asked the OPM to (1) "revoke" his Air Force personnel record stating that he had been terminated, (2) correct his IRS personnel records to reflect that he was restored in 1987 at the GS-12 pay scale, and (3) recompute his retirement annuity accordingly. The OPM, initially and on reconsideration, denied Graham's request, stating that it did not have the authority to change the personnel records of other agencies. Graham then appealed to the board.

In an initial decision, the administrative judge (AJ) found *King* and the statute that was interpreted in *King*, 38 U.S.C. § 2024(d) (1988), inapplicable to Graham. The AJ determined, *inter alia*, that *King* involved only the interpretation of § 2024(d) and did not invalidate any OPM regulation. The AJ's initial decision became the board's final decision when Graham's petition for review was denied.

## DISCUSSION

■ We may reverse a decision of the board only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140 (Fed.Cir.1986). Statutory interpretation is a question of law reviewed *de novo* on appeal. *Watson v. Department of Justice*, 64 F.3d 1524, 1528 (Fed.Cir.1995).

Graham argues that the board incorrectly decided that *King* and § 2024(d) were not applicable to his situation. Graham points out that the Supreme Court in *King* found that § 2024(d) covered "AGR" (Active Guard/Reserve) participants. *See* 502 U.S. at 217 n. 5, 112 S.Ct. at 572 n. 5. Graham argues that he is therefore entitled to § 2024(d) protection and that the regulation under which he was terminated is invalid as inconsistent with *King*.

The OPM argues that the board correctly applied the law to the uncontested facts of Graham's case, and that neither *King* nor § 2024(d) applies here. The OPM stresses that *King* does not invalidate any of its regulations. The OPM further argues that § 2024(d) cannot apply to Graham, because his military furlough was for "active duty

(other than for training)," and § 2024(d), by its express terms, applies only to "active duty for training" and "inactive duty training."

■ We agree with the OPM that § 2024(d) is inapplicable to Graham and cannot provide him with the relief that he seeks.

Section 2024(d) provides in relevant part:

[Certain employees] shall upon request be granted leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon employee's release from a period of such [duty,] such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d) (1988).

In *King*, the Supreme Court held that restoration benefits under § 2024(d) are not limited to service members who spend a "reasonable" length of time in military service. 502 U.S. at 216, 112 S.Ct. at 571–72. They are available to individuals who fall within its terms irrespective of length of time in the military. *Id.* at 222, 112 S.Ct. at 574–75. The Court noted that other subsections of § 2024, such as § 2024(a) and (b), which provide restoration rights similar to § 2024(d) under different circumstances, expressly provide limits on the permissible length of military service. *Id.* at 220, 112 S.Ct. at 573–74. The Court therefore reasoned that Congress's failure to include a time limit in § 2024(d) was intentional, and that the rights afforded thereunder were not limited to any length of military service. *Id.* at 220–21, 112 S.Ct. at 573–74. The Court did not invalidate military service time limits provided for elsewhere, such as those in the Federal Personnel Manual.

Moreover, Graham, a reservist, cannot benefit from § 2024(d) because he does not come within its express provisions. It is uncontested that he was on active duty other than for training; he was not required to perform "active duty for training" or "inactive duty training." The statute under which

Graham was ordered into military service provides in relevant part:

> [E]ach armed force shall have officers of its reserve component on *active duty (other than for training)* at the seat of government, and at headquarters responsible for reserve affairs, to participate in preparing and administering the polices and regulations affecting those reserve components.

10 U.S.C. § 265 (1988) (emphasis added). Accordingly, Graham was on active duty other than for training and is not entitled to the relief he seeks.

## CONCLUSION

The board did not err in declining to order the OPM to recompute Graham's retirement annuity. The decision of the board is

AFFIRMED.