TAYLOR, C.J.
(concurring in part and dissenting in part). At issue in this case is whether the tolling provision of the Servicemembers Civil Relief Act (SCRA), 50 USC Appendix 526(a), tolls the period of limitations for a plaintiffs cause of action when the plaintiff, a nonservicemember, failed to raise the tolling provision at the trial-court level. The Court of Appeals declined to address this issue because it determined that the issue was unpreserved and that, in any event, the tolling provision was discretionary. A majority of this Court holds that the tolling provision is mandatory, not discretionary, but affirms on the different ground that plaintiff waived the tolling provision when he failed to raise it at the trial-court level.
Although I agree with the majority that certain portions of the SCRA were intended to benefit both *392 servicemembers and nonservicemembers, and I agree that the SCRA’s tolling provision is mandatory, I disagree that a nonservicemember can waive the provision. Rather than affirm the Court of Appeals on a different ground, as the majority does, I would reverse in part the judgment of the Court of Appeals and remand this case to the Court of Appeals to consider whether, to avoid a miscarriage of justice, it should remand this case to the circuit court so that plaintiff can develop a complete record concerning defendant’s periods of military service and any other matters relevant to whether the SCRA tolled the period of limitations applicable to plaintiffs claim.
The purposes of the SCRA, as set forth in 50 USC Appendix 502, are:
(1) to provide for, strengthen, and expedite the national defense through protection extended by this Act to service-members of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and
(2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service. [Emphasis added.]
Despite the clear indication in 50 USC Appendix 502 that the SCRA is intended to benefit servicemembers, and its lack of reference to nonservicemembers, several courts have held that the SCRA was intended to benefit servicemembers and nonservicemembers alike.[1] And, *393 indeed, the tolling provision of 50 USC Appendix 526(a) appears to suggest that this may be the case:
The period of a servicemember’s military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court... by or against the servicemember.... [Emphasis added.]
By its use of the phrase “by or against,” the provision implies at least an incidental benefit of tolling to nonservicemembers. Several courts have held that this tolling provision is automatic, which means that all that must be shown in order for tolling to apply while the period of limitations is running or has expired is that one party is in the armed service.[2] In this case, the trial court was apprised at the time plaintiff sought an extension for the summons that the reason plaintiff was unable to serve defendant was because defendant was in the service. For courts that adhere to the automatic tolling, this would mean that, at that moment, the automatic tolling provision was activated. The issue here is whether Michigan adheres to the automatic-tolling doctrine.
*394 Various courts have also held that the tolling provision is mandatory and not subject to judicial discretion.[3] Even our own court rules recognize the mandatory, automatic nature of the SCRA’s tolling provision by requiring as a prerequisite for granting a default judgment that an affidavit of nonmilitary service must be filed in actions in which a defendant has failed to appear. MCR 2.603(C). Because the tolling provision is automatic, mandatory, and preclusive of state statutory periods of limitations, other courts have recognized that it can be raised for the first time on appeal, which is akin in some sense to the treatment of jurisdictional claims, although not discussed in those explicit terms.[4]
Notwithstanding the mandatory nature of 50 USC Appendix 526(a), 50 USC Appendix 517(a) expressly provides that a “ servicemember may waive any of the rights and protections provided by this Act,” which necessarily includes the tolling provision. There is no similar provision with respect to nonservicemembers. Although 50 USC Appendix 517, by its plain terms, applies only to servicemembers and the SCRA contains no similar waiver provision for nonservicemembers, the majority here extends the right to waive the tolling provision to nonservicemembers.
In effecting this “addition” to the statute, the majority, citing congruency, relies unconvincingly on the statutory purpose of the SCRA (which does not even mention nonservicemembers) and the tolling statute *395 (which itself contains no waiver provision) to conclude that a nonservicemember may waive the entitlement to tolling by failing to raise it. This addition by the majority is puzzling conceptually because this Court has strongly forbidden courts from adding language, or rights, to statutes. Moreover, the language in the statute that the majority uses as the basis for this addition neither mentions nonservicemembers in giving rights nor discusses the notion of waiver with respect to tolling. Moreover, our sense of what is congruent should not trump the Legislature’s. Yet the majority reads waiver by the nonservicemember into the tolling provision.
Furthermore, to do so here is even more unsettling, given that the United States Supreme Court has instructed that the statute means what it says and that no additions are allowed. In Conroy v Aniskoff, 507 US 511; 113 S Ct 1562; 123 L Ed 2d 229 (1993), the Court was invited to add words or concepts to the predecessor statute. It refused to do so. In Conroy, the United States Supreme Court considered whether a servicemember was required to demonstrate prejudice before being entitled to tolling under former 50 USC Appendix 525. The Court first noted that the statutory command in the tolling provision “that the period of military service ‘shall not be included’ in the computation of ‘any period now or hereafter provided by any law’ ” — was unambiguous, unequivocal, and unlimited. Id. at 514. In rejecting the respondents’ argument — that the statute implicitly conditioned tolling on a showing of hardship or prejudice because other provisions of the SCRA were expressly conditioned on a showing of prejudice — the Court reasoned:
Respondents also correctly remind us to “follow the cardinal rule that a statute is to be read as a whole, see *396 Massachusetts v. Morash, 490 U.S. 107, 115 [109 S Ct 1668; 104 L Ed 2d 98] (1989), since the meaning of statutory language, plain or not, depends on context.” King v. St. Vincent’s Hospital, 502 U.S. 215, 221 [112 S Ct 570; 116 L Ed 2d 578] (1991). But as in King, the context of this statute actually supports the conclusion that Congress meant what [former 50 USC Appendix 525] says. Several provisions of the statute condition the protection they offer on a showing that military service adversely affected the ability to assert or protect a legal right. To choose one of many examples, [former 50 USC Appendix 532(2)] authorizes a stay of enforcement of secured obligations unless “the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service.” The comprehensive character of the entire statute indicates that Congress included a prejudice requirement whenever it considered it appropriate to do so, and that its omission of any such requirement in § 525 was deliberate. [Conroy, supra at 515-516.]
The United States Supreme Court’s sound reasoning is no different from this Court’s own standards of statutory interpretation. We assume that the Legislature intended what it plainly expressed. See Liss v Lewiston-Richards, Inc, 478 Mich 203, 207; 732 NW2d 514 (2007). We do not read language into an unambiguous statute. People v McIntire, 461 Mich 147, 153; 599 NW2d 102 (1999). And when the Legislature includes certain language in one statutory provision but not in another, we do not read the missing language into the statute under the assumption that the Legislature meant to include it; rather, we proceed under the assumption that the Legislature made a deliberate choice to not include the language. Farrington v Total Petroleum, Inc, 442 Mich 201, 210; 501 NW2d 76 (1993).
As applied here to the SCRA, then, the fact that Congress specifically provided for a waiver of SCRA provisions by a servicemember but did not likewise *397 provide for a waiver by a nonservicemember must be interpreted as intentional, and it is not for this Court to give to a nonservicemember the ability to waive mandatory provisions in contravention of congressional intent. Likewise, the language contained in the tolling provision, 50 USC Appendix 526(a), that arguably applies to both servicememhers and nonservicemembers is not similarly contained in the waiver provision, 50 USC Appendix 517.
Finally, although this Court generally does not review unpreserved issues, we may make an exception when review is necessary to avoid a miscarriage of justice. Napier v Jacobs, 429 Mich 222, 232-233; 414 NW2d 862 (1987). Given that plaintiff was not even required to file a complaint as long as defendant was in the service, it seems inconceivable that plaintiff could somehow lose the benefit of tolling simply by filing the complaint but being unable to timely serve defendant. Thus, it appears that a miscarriage of justice could very likely occur without review. Accordingly, I would hold that plaintiff was unable to waive the mandatory, automatic tolling provision of 50 USC Appendix 526(a), that the Court of Appeals erred in failing to consider plaintiffs argument on appeal, and that remand is necessary to address this argument.

 Ray v Porter, 464 F2d 452, 455 (CA 6, 1972) (“The [SCRA] was adopted by the Congress to protect the rights of individuals in the military service of the United States, and also to protect the rights of individuals having causes of actions against members of the Armed Forces of the United States.”), citing, among other cases, Stewart v Kahn, 78 US (11 Wall) 493; 20 L Ed 176 (1871), and Wolf v Internal Revenue Comm’r, 264 F2d 82 (CA 3, 1959); Ricard v Birch, 529 F2d 214, 216 (CA *393 4, 1975) (“[T]he parallel purpose of the Act [is] to protect the rights of individuals having causes of action against members of the armed forces In re AH Robins Co, Inc, 996 F2d 716, 720 (CA 4, 1993) (stating that the benefits of the tolling mechanism “inure both to military personnel and to those with rights of action against military personnel”); Kenney v Churchill Truck Lines, Inc, 6 Ill App 3d 983, 993; 286 NE2d 619 (1972) (“The act is not restrictive to merely the serviceman, since it addresses itself to ‘any action or proceeding in any court... by or against any person in military service.’ ”); Ludwig v Anspaugh, 785 SW2d 269, 271 (Mo, 1990) (“Kits purpose is not only to protect the rights of citizens serving in the armed forces but also those of persons having causes of action against persons in military service.”).

 Ray, supra at 456; Ricard, supra at 217; In re AH Robins Co, Inc, supra at 718; Kenney, supra at 993, quoting Illinois Nat’l Bank of Springfield v Gwinn, 390 Ill 345, 354; 61 NE2d 249 (1945); Ludwig, supra at 271.

 Ray, supra at 455-456; Ricard, supra at 216; In re AH Robins Co, Inc, supra at 718, 720; Kenney, supra at 993, quoting Illinois Nat’l Bank, supra at 354; Ludwig, supra at 271. Cf. Conroy v Aniskoff, 507 US 511, 514-515; 113 S Ct 1562; 123 L Ed 2d 229 (1993) (“The statutory command in [former 50 USC Appendix 525] is unambiguous, unequivocal, and unlimited,” and a review of other provisions in the act “supports the conclusion that Congress meant what § 525 says.”).

 Ricard, supra at 216; Kenney, supra at 992-993.